IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-0673-CBS

UNITED STATES OF AMERICA,
        Plaintiff,
v.

ROBERT KONCZAK, and
MARCIA KONCZAK,
        Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

This civil action came before the court for a trial to the court on a single claim brought

under the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3001 *et seq.*

Plaintiff, the United States of America ("USA"), brings the claim on behalf of the Small Business

Administration ("SBA") to collect on personal, unconditional guarantees executed by the

Defendants, Marcia Konczak and Robert Konczak ("the Konczaks").  The court has original

jurisdiction over this action pursuant to Title 28 U.S.C. § 1345.


I.      Findings

At the time of the events related to this case, the Konczaks were residents of Woodland

Park, Teller County, Colorado.  Mr. Robert Konczak was the president of Konczak's Koncepts,

Inc. ("Konczak's Koncepts"), a corporation that was formed with his wife, his son, Christopher

Konczak, and his daughter-in-law, Keli Konczak, to renovate and operate a restaurant.  (Trial

Testimony of Robert Konczak).  The Konczaks jointly owned 51% of the shares in Konczak's

Koncepts while Christopher and Keli Konczak owned the remaining 49% of the shares.

On June 27, 2003, Mr. Konczak, as President of Konczak's Koncepts, signed a 20-year Note for a loan in the amount of $684,000.00 with interest at the rate of 5.314% per annum. (*See* Trial Exhibit 1, Trial Testimony of Robert Konczak).   The loan was made by Pikes Peak Regional Development Corporation ("Pikes Peak"), a Certified Development Corporation.   (*See* Trial Exhibit 1).   In return for the Note, Konczak's Koncepts promised to pay $684,000.00, plus "interest on the unpaid principal balance, the fees specified in the Servicing Agent Agreement, and all other amounts required by this Note." (*See* Trial Exhibit 1).   One hundred percent of the loan was guaranteed by the Small Business Administration ("SBA").   (*See* 15 U.S.C. § 636(a), Trial Testimony of Carla Donaldson).[1]   The Note was assigned to the SBA on June 27, 2003. (*See* Trial Testimony of Carla Donaldson, Stipulated Finding of Fact ¶ 1 (Courtroom Minutes/Minute Order) (Doc. # 37)), Trial Exhibit 1 at page USA0206).

Also on June 27, 2003 the Konczaks, acting as individuals, signed Unconditional Guarantees, assuming personal responsibility for the loan.   (*See* Trial Exhibit 2).[2]   The Konczaks

> "unconditionally guarantee[d] payment to the lender of all amounts owing under the note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand

---

[1]     On May 28, 2003, the United States, acting through the SBA, guaranteed the debt through a debenture.  Under SBA regulations, a debenture "is an obligation issued by a [Certified Development Corporation] and guaranteed 100 percent by SBA, the proceeds of which are used to fund a 504 loan." 13 C.F.R. § 120.802.  The SBA "may guarantee the timely payment of all principal and interest as scheduled on any debenture issued by a qualified State or local development company." 15 U.S.C. § 697(a)(1).  "The full faith and credit of the United States [is] pledged to the payment of all amounts guaranteed under this subsection." *Id.* at § 697(a)(3).  "The SBA guarantee program is designed to provide protection for lenders and thereby encourage private lending to small businesses." *Rooster's Grill, Inc. v. Peoples Bank*, 965 F. Supp. 2d 770, 774 (S.D. Miss. 2013).  *See also* 13 C.F.R. §120.800 (the purpose of the 504 program is "to foster economic development, create or preserve job opportunities, and stimulate growth, expansion, and modernization of small businesses.").  An SBA guarantee does not release the borrower from its indebtedness; it simply changes who enforces the debt. *Rooster's Grill*, 965 F. Supp. 2d at 774 (S.D. Miss. 2013) (citations omitted).

[2]     A guaranty is defined as "a contract that some particular thing shall be done exactly as it is agreed to be done, whether it is to be done by one person or another, and whether there be a prior or principal contractor or not." *See* Black's Law Dictionary at 634 (5th ed. 1979).

upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor."

(Trial Exhibit 2 at ¶ 1).  Under the Unconditional Guaranties, the Konczaks are personally liable for the Note, including the principal, interest and any statutory fees.  (Trial Exhibits 1, 2).  The Unconditional Guaranties were also assigned to the SBA on June 27, 2003.  (*See* Trial Exhibit 2 at pages USA0211, USA0230, Testimony of Carla Donaldson).

The loan proceeds were distributed to Konczak's Koncepts and used for purchase, renovation, and operation of the business.  In July of 2007, Konczak's Koncepts ceased making payments and defaulted on its obligation to repay the loan.  (*See* Trial Exhibits 12, 32, Trial Testimony of Robert Konczak).  Christopher and Keli Konczak sought protection in bankruptcy. (Trial Testimony of Robert Konczak).  Konczak's Koncepts failed and on October 17, 2008, filed Articles of Dissolution with the Colorado Secretary of State.  (*See* Trial Exhibit 13).[3]

The SBA paid the debenture on March 26, 2008.  (See Trial Exhibit 23 at page USA0326).  Neither discussions between Pikes Peak and the Konczaks nor discussions between the SBA and the Konczaks resulted in any resolution of the debt.  (See Trial Testimony of Carla Donaldson, Trial Testimony of Robert Konczak).  On March 12, 2010, the SBA referred the debt to the United States Department of the Treasury's Financial Management Service ("Treasury") pursuant to Title 31 U.S.C. § 3711(g)(1).  The SBA's initial referral to Treasury in March of 2010 identified only Konczak's Koncepts as liable on the Note.  On January 30 and 31, 2012, the SBA made a second referral to Treasury that identified Konczak's Koncepts and the individual guarantors, the Konczaks, as all liable on the Note.  (Trial Testimony of Carla Donaldson, Trial Testimony of Regina Crisafulli, Trial Testimony of Robert Konczak).  Treasury

---

[3]     California Bank and Trust held the first deed of trust on the real property of Konczak Koncepts, while the SBA held a lien on the personal property of Konczak Koncepts.  (Stipulated Finding of Fact ¶ 10, Trial Testimony of Robert Konczak).  California Bank and Trust foreclosed on the real property.  (*See id.*).  The personal property was liquidated and the proceeds have not yet been disbursed.  (*See id.*).

placed the Konczaks on the Treasury Offset Program ("TOP") as required by 31 U.S.C. § 3716. Between March 2010 and January 2012, Treasury applied $2,552.70 of the Konczaks' social security benefit payments and federal tax refunds to the balance owed on the Note. (*See* Trial Exhibit 11, Trial Testimony of Regina Crisafulli).  In 2012, the SBA applied a TOP offset of $6,000.51 to the balance owed on the Note.  (*See* Trial Testimony of Regina Crisafulli).  A total amount of $8,553.21 in TOP offsets was applied to the debt. (*See id.*).

Treasury employed two private collection agencies, CBE Group and Progressive Financial Services, Inc. ("PFS"), to collect the debt. (*See* Trial Testimony of Regina Crisafulli, Trial Exhibit 19, Stipulated Finding of Fact ¶ 8).[4]  In letters dated May 7, 2010 and December 7, 2010, the Konczaks offered to pay $25,000.00 to settle the total amount that was owed at that time. (*See* Exhibits 3, 5, Stipulated Finding of Fact ¶ 8 (*See* Courtroom Minutes/Minute Order) (Doc. # 37)).  On December 18, 2010, the Konczaks prepared and executed a "Consumer Debtor Financial Statement" for PFS to support their offer of settlement.  (See Trial Exhibit 6). On March 4, 2011 the Konczaks' counsel wrote a letter to PFS, stating in pertinent part: "[t]he purpose of this letter is to provide you again updated financial information and to advise that my clients are prepared to make another settlement offer provided I can first discuss the matter with a supervisor." (*See* Trial Exhibit 7).

On May 11, 2011, the Konczaks wrote a letter to CBE Group, in which they offered to settle their personal guarantees for the Note. (*See* Trial Exhibit 8, Trial Testimony of Robert Konczak).  Also on May 11, 2011, the Konczaks submitted to CBE a Consumer Debtor Financial Statement that was prepared on May 4, 2011.  (*See* Trial Exhibit 8, Trial Testimony of Robert Konczak).  On July 13, 2011 and August 1, 2011, the Konczaks wrote letters to CBE Group in which they again offered to settle their personal guarantees for the Note. (*See* Trial Exhibits 9,

---

[4]     Treasury may contract with private collection agencies in an effort to collect the debt to the United States. 31 U.S.C. § 3711(g)(7).

10, 14).  Neither of the private collection agencies acting on Treasury's behalf were able to collect the debt.  (*See* Trial Testimony of Regina Crisafulli).  On January 30, 2012, Treasury sent a letter to Robert Konczak, demanding immediate payment of the loan.  (*See* Trial Exhibit 11 at page USA291, Trial Testimony of Regina Crisafulli).  Mr. Konczak testified that he never received that letter, as it was mailed to Konczak's Koncepts' address after it was dissolved.

Interest accrued on the debt between the date that the Note was funded in September 2003, and the "charge-off" date, July 6, 2009.  (Trial Testimony of Carla Donaldson).[5]  No further interest has accrued on the Note since the charge-off date.  (*Id.*).  Because the debt has been delinquent for over two years, Treasury added a 30% Debt Management Service ("DMS") fee of $198,029.11 on the debt's principal and interest for costs of collection.  *See* 31 U.S.C. § 3717(e)(1) ("The head of an executive, judicial, or legislative agency shall assess on a claim owed by a person--(1) a charge to cover the cost of processing and handling a delinquent claim."); Title 31 U.S.C. § 3711(g)(6) ("Any agency operating a debt collection center to which nontax claims are referred or transferred under this subsection may charge a fee sufficient to cover the full cost of implementing this subsection. The agency transferring or referring the nontax claim shall be charged the fee, and the agency charging the fee shall collect such fee by retaining the amount of the fee from amounts collected pursuant to this subsection."); Title 31 C.F.R. § 285.12(j) ("Fiscal Service and other debt collection centers (as defined in paragraph (a) of this section) may charge fees sufficient to cover the full cost of providing debt collection services authorized by this section.").  Treasury also added a 3% DOJ fee of $26,539.09 to the principal and interest of the debt.  *See* "21st Century Department of Justice Appropriations Authorization Act," Pub. L. 107-273, Div. C, Title I, §11013(a), Nov. 2, 2002, 116 Stat. 1823,

---

[5]       The charge-off date is the date when the SBA determines that the loan or debt is no longer receiving payments, is in default, and is now eligible for referral to Treasury for collection.  (Trial Testimony of Carla Donaldson).

Title 28 U.S.C. § 527 Note ("Notwithstanding section 3302 of title 31, United States Code, or any other statute affecting the crediting of collections, the Attorney General may credit, as an offsetting collection, to the Department of Justice Working Capital Fund up to 3 percent of all amounts collected pursuant to civil debt collection litigation activities of the Department of Justice.  Such amounts in the Working Capital Fund shall . . . be used first, for paying the costs of processing and tracking civil and criminal debt-collection litigation, and, thereafter, for financial systems and for debt-collection-related personnel, administrative, and litigation expenses.").  The Konczaks are indebted to the USA in the total amount of $884,666.09, which includes the principal amount of $599,043.83, interest in the amount of $61,053.17, and fees of the Departments of Treasury and Justice in the amount of $224,569.09.  (Trial Exhibit 31).

On April 13, 2012, Treasury referred the debt to the Department of Justice ("DOJ") for litigation.  (*See* Trial Testimony of Regina Crisafulli, Certificate of Indebtedness (Trial Exhibit 12)).  Also on April 13, 2012, the DOJ sent a demand letter to each Defendant at their residence in Woodland Park, requesting immediate payment of the debt.  (See Trial Exhibit 27 at pages 3-4 of 4).  On April 20, 2012, the Konczaks wrote to Treasury and indicated that they could not and would not pay the debt.  (See Trial Exhibit 27, Trial Testimony of Robert Konczak).  On June 29, 2012, the Konczaks wrote a letter to former Assistant U.S. Attorney Stephen D. Taylor, who represented the United States at that time.  Through counsel, the Konczaks stated that they

> are committed to resolving their guarantees without seeking bankruptcy protection and have authorized me to extend this offer. They will pay $10,000 at the time of executing a written settlement agreement, and $3,000 per month for one year for a total of $46,000.

(See Trial Exhibit 16).  Mr. Taylor responded by a letter dated July 30, 2012.  (See Trial Exhibit 28, Trial Testimony of Robert Konczak).  No settlement has ever been reached on the debt.  This civil action was filed on March 3, 2014.  (*See* Complaint (Doc. # 1)).

II.     Analysis

The FDCPA provides the "exclusive civil procedures for the United States . . . to recover a judgment on a debt." 28 U.S.C. § 3001(a)(1).  Congress enacted the FDCPA "to create a comprehensive statutory framework for the collection of debts owed to the United States government" and "to improve the efficiency and speed in collecting those debts." *N.L.R.B. v. E.D.P. Med. Computer Sys., Inc.*, 6 F.3d 951, 954 (2d Cir. 1993).

The Konczaks do not dispute the existence of the debt.  (Trial Testimony of Robert Konczak).  They raise the affirmative defense of the statute of limitations.  The Konczaks bear the burden to prove the affirmative defense that the USA's claim is barred by the statute of limitations.  *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 (4th Cir. 2006) ("the statute of limitations is an affirmative defense, meaning that the defendant generally bears the burden of affirmatively pleading its existence") (citations omitted);  *U.S. Small Bus. Admin. v. Alto Tech Ventures, LLC*, No. 07-4530 SC, 2008 WL 5245903, at *12 (N.D. Cal. Dec. 17, 2008) ("Statutes of limitations are affirmative defenses and Defendants therefore bear the burden of proving that the SBA's action is time-barred.") (citation omitted).

A guaranty of an SBA loan is a contract with the United States under § 2415. *United States on Behalf of SBA v. Richardson*, 889 F.2d 37, 39 (3d Cir. 1989).  "The federal government and its agencies are entitled to a six year statute of limitations period in contract actions."  *LPP Mortgage Ltd. v. Cathey*, No. Civ.A. 04-2031, 2006 WL 1476026, at * 2 (W.D. La. May 23, 2006).[6]  "An action by the United States to collect the balance due on an SBA loan is subject to the statute of limitation found at 28 U.S.C. § 2415(a); a state statute of limitations

---

[6]      Title 28 § 2415(a) provides in pertinent part that ". . . every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues. . . *Provided*, That in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment. . . ."

cannot displace federal law with respect to such an action." *United States v. Frey*, 708 F. Supp. 310, 312 (D. Kan. 1988) (citations omitted). *See also United States v. Johnson*, 946 F. Supp. 915, 918 (D. Utah 1996) ("The United States Supreme Court and the lower courts of appeals have consistently held that the United States and its agencies are not bound by state statute[s] of limitations in enforcing the rights of the United States government.") (citing *United States v. Ward*, 985 F.2d 500, 502 (10th Cir. 1993) ("federal law governs issues involving the rights of the United States arising under nationwide federal programs")) (footnote omitted).

It is next necessary to determine when the USA's action accrued for purposes of triggering the running of the statute of limitations.  Section 2415(a) "itself provides no guidance as to when a particular cause of action accrues." *United States v. Vanorum,* 912 F.2d 1023, 1025 (8th Cir. 1990).  The Konczaks argue that the USA's claim accrued on December 2, 2007, the date that Konczak's Koncepts defaulted on the Note by failing to make its monthly payment.  They argue that this civil action had to be filed no later than June 2013, six years from the date of default on the Note.

In *United States v. Gilmore,* an action by the United States to collect on a guaranty of an SBA loan, the Tenth Circuit Court of Appeals determined that the statute of limitations in § 2415 was triggered by the SBA's notification of acceleration and demand for full payment.  698 F.2d 1095, 1097 (10th Cir.1983).  *See also United States v. Agri Servs., Inc.*, 81 F.3d 1002, 1005 (10th Cir. 1996) (A claim for a debt based in contract "accrues for the purposes of § 2415 when the holder of the note exercises the right to accelerate. . . [T]he six-year limitation period set out in section 2415(a) begins to run when the cause of action accrues; and accrual occurs upon acceleration.") (citing *Gilmore*, 698 F.2d at 1097);  *Frey*, 708 F. Supp. at 312-13 ("earliest point at which the statute of limitations began to run" was the date the "SBA first sent notice of acceleration and demand for payment to the defendant guarantors");  *United States v. Ryals*,

No. 92-2068-L, 1992 WL 279738, at * 2 (D. Kan. 1992) (in action to recover debts owed to the

Farmers Home Administration, a division of the Department of Agriculture, the six-year statute of

limitations of § 2415(a) "begins to run at the time the government accelerates the loans, not

when the initial payment default by the debtor occurs.") (citations omitted).

Under the terms of the Note, if there is a default by Konczak's Koncepts, the SBA "may:

(A) Require immediate payment of all amounts owing under this Note; (B) Collect all amounts

owing from any Borrower or Guarantor; (C) File suit and obtain judgment; (D) Take possession

of Collateral; and (E) Sell, lease, or otherwise dispose of, any Collateral at public or private sale,

with or without advertisement."  (Trial Exhibit 1 at ¶ 8).  The terms of the Guarantees provide

that "Guarantor must pay all amounts due under the Note when Lender makes written demand

upon Guarantor."  (Trial Exhibit 2 at ¶ 1).

> Lender may take any of the following actions at any time without notice, without guarantor's consent, and without making demand upon Guarantor:
> . . .
> B.      Refrain from taking any action on the Note, the Collateral, or any guarantee,
> . . .
> D.      Compromise or settle with the Borrower or any guarantor of the Note, …
> H.      Exercise any rights it has, including those in the Note and other Loan Documents.
> . . .
> These actions will not release or reduce the obligations of Guarantor . . . .

(Trial Exhibit 2 at ¶ 4).  Exercise of a written demand on the Guarantor is optional.  (Trial Exhibit

2 at ¶ 4).

"[W]here the acceleration of the installment payments in cases of default is optional on

the part of the holder, then the entire debt does not become due on the mere default of payment

but affirmative action by the creditor must be taken to make it known to the debtor that he has

exercised his option to accelerate. . . ." *United States v. Rollinson*, 629 F. Supp. 581, 584

(D.D.C. 1986) (internal quotation marks and citations omitted).  The Tenth Circuit has agreed

that, where the right to accelerate payments through immediate demand is optional, "the six-

year limitations period specified in 28 U.S.C. § 2415(a) applies, and that the period does not run

until the government exercised its right to accelerate the note and made demand for payment."

*United States v. Myers*, No. 94-3108, 51 F.3d 287, at *1 (10th Cir. March 31, 1995) (citing

*Gilmore*, 698 F.2d at 1097).  *See also United States v. Feterl*, 849 F.3d 354, 357 (8th Cir. 1988)

("[W]here the lender has fully reserved the right to respond to a borrower's default in whatever

manner it deems proper, affirmative action by the creditor must be taken to make it known to the

debtor that [the creditor] has exercised his option to accelerate.") (internal quotations and

citations omitted).  "Before the limitations period begins to run, a lender must, at least, have

invoked the acceleration clause in the loan agreement."  *Feterl*, 849 F.3d at 356.  "Because

acceleration clauses are generally for the benefit of the creditor, courts tread lightly on the

creditor's freedom to decide whether acceleration is immediately necessary upon the

occurrence of a default."  *Feterl*, 849 F.3d at 357.

The Konczaks' argument that the USA's claim accrued and the statute of limitations

started to run on July 3, 2007, the date of default, is inconsistent with the evidence and the

applicable law.  Under the express terms of the Guarantees, acceleration by a demand

requesting immediate payment was optional.  Although it is undisputed that the Note became

delinquent in July 2007, the SBA did not exercise its right to demand payment at that time.  The

USA's claim accrued when it exercised its right to accelerate the Note and made demand for

payment.  *Agri Servs.*, 81 F.3d at 1005;  *Myers*, 51 F.3d 287, *1.  On January 30, 2012,

Treasury sent a letter to Mr. Konczak, demanding immediate payment of the loan.  (*See* Trial

Exhibit 11 at page USA291, Trial Testimony of Regina Crisafulli).  On April 13, 2012, the DOJ

sent demand letters to the Konczaks seeking immediate payment for the debt in the amount of

$884,666.09.  (Trial Exhibit 27 at 3-4 of 4).  On April 20, 2012, the Konczaks acknowledged

receipt of "the two demand letters" sent on April 13, 2012.  (Trial Exhibit 27 at 1 of 4).  The

USA's Complaint filed on March 3, 2014 is not barred because it was filed less than six years after both of these demands.

The court rejects the Konczaks' argument that the USA's claim accrued no later than December 17, 2007, the date that Pikes Peak wrote a letter to Konczak's Koncepts.  (Trial Exhibit 32).  By its own language the letter does not constitute a demand.  The letter states that "we have notified the SBA who will in turn seek the assistance of the United States Attorney's Office to protect their interest," and mentions possible remedies.  (Trial Exhibit 32).  The letter does not exercise the right to accelerate or request immediate payment.  *See United States on Behalf of Small Bus. Admin. v. LaFrance*, 728 F. Supp. 1116, 1120 (D. Del. 1990) (letter written "to acquaint you [debtor] with the fact that you should contact the undersigned at once to discuss what arrangements you plan to make to pay the loan in the near future" was not "an invocation of the option to accelerate").  As here, a subsequent letter demanding immediate payment of the balance of the loan represented exercise of the option to accelerate.  *LaFrance*, 728 F. Supp. at 1120.

As to the March 20, 2010 letter to Konczack's Koncepts in which Treasury exercised the right to acceleration and demanded immediate payment, Mr. Konczak testified that he never received that letter.  There is some legal authority that the statute of limitations does not begin to run until defendants *received* a written demand for payment.  Thus, the USA's claim would not have accrued and the statute of limitations would not have started to run on March 20, 2010.  *See United States v. Vanorum*, 912 F.2d 1023, 1027 (8th Cir. 1990) ("we hold the statute of limitations on the SBA's action to collect under the guarantees began to run only after [appellee] had received SBA's demand");  *Brown*, 833 F. Supp. at 630 ("the statute of limitations did not begin to run on plaintiff's action until defendants received a written demand for payment. . . .").

Even if the statute of limitations had started to run on March 20, 2010, the USA's Complaint filed on March 3, 2014 was not barred because it was filed less than six years after March 20, 2010.

III.     Conclusion

The US has proved by a preponderance of the evidence that Defendants owe it a debt on the Note that they personally guaranteed.  The amount of the debt Defendants owe is $884,666.09, which includes principal, interest, and applicable statutory fees.  The evidence and the applicable law persuade the court that the Konczaks have not met their burden to prove that the USA's claim is barred by the statute of limitations.  The claim for a debt is timely because the USA filed the claim within the six-year statute of limitations.[7]  Accordingly,

IT IS ORDERED that judgment shall enter in favor of the United States and against Defendants in the amount of $884,666.09, which includes the principal amount of $599,043.83, interest in the amount of $61,053.17, and fees of the Departments of Treasury and Justice in the amount of $224,569.09.

DATED at Denver, Colorado, this 3rd day of August, 2015.

BY THE COURT:


___s/ Craig B. Shaffer_____
United States Magistrate Judge

---

[7]     As the court determines that the USA's claim is not barred by the statute of limitations, it need not reach at this time the USA's alternative argument that the Konczaks' acknowledgement of the debt restarted the running of the statute of limitations.